**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DENISE DAICHENDT and ADA "JUNE" ODELL )<br>*individually and on behalf of themselves and all* )<br>*others similarly situated*, )<br>　　　　　　　　　　　　　　　　　　　　 )<br>　　　　Plaintiffs, )<br>　　　　　　　　　　　　　　　　　　　　 )<br>　　　　v. )<br>　　　　　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　　　 )<br>CVS PHARMACY, INC., )<br>　　　　　　　　　　　　　　　　　　　　 )<br>　　　　Defendant. )<br>　　　　　　　　　　　　　　　　　　　　 ) | Case No.22 CV 3318<br>Hon. Robert W. Gettleman |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Denise Daichendt and Ada "June" Odell ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, bring this Amended Class Action Complaint for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), against Defendant CVS Pharmacy, Inc. ("CVS" or "Defendant"), and allege on personal knowledge, due investigation of their counsel and, where indicated, on information and good faith belief as follows:

## I.　　NATURE OF THE ACTION

**1.**　　Plaintiffs bring this action for damages, as well as other legal and equitable remedies resulting from the unlawful conduct of CVS as it relates to the biometric privacy rights of Illinois residents.

2.　　　Specifically, CVS collects, uses and stores Illinois consumers' biometric identifiers[1] without first obtaining prior express written consent, as required under BIPA.

3.　　　One of the services that CVS markets and sells to consumers in the State of Illinois is passport photos. Specifically, CVS utilizes the KODAK Biometric ID Photo System which allows users to take and edit pictures of facial images through the "KODAK | Alaris" application called "KODAK Moments."

4.　　　As detailed below, prior to using the CVS passport service customers must first provide identifying information (e.g., last name, first name, phone number and email) on self-service computer terminals within the CVS store.[2]

5.　　　After the information is entered, a CVS employee takes a photo using a digital camera, and that digital image is then scanned for biometric identifiers using the KODAK Biometric ID Photo System. In doing so, CVS "collect[s], capture[s] . . . /or otherwise obtain[] a person's or a customer's biometric identifier." In addition, CVS matches the scanned biometric identifiers with the real-world identifying information (name, phone, number, email) it has just collected from consumers, as described above.

6.　　　CVS actively collects biometric identifiers, has control over the biometric identifiers, can access the biometric identifiers and actually uses the biometric identifiers as is evidenced by the fact that CVS matches each customer's facial geometry against the passport photo requirements.

---

[1]　　　"'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." Id. ("Biometric identifier" and "Biometric information" are collectively referred to herein as "Biometrics".)

[2]　　　Notably, a user cannot proceed with any other aspect of using the System to obtain passport photos without providing this identifying information.

7.      In sum, CVS devised (and profited from a System) whereby it collected the Biometrics of Plaintiffs and the putative class members without prior express written consent as is required under BPA. And, as a result of the identifying information required to use the System, CVS was more than capable of associating the Biometrics collected with the users 'identities.

8.      Biometric identifiers are particularly sensitive personal information. As the Illinois Legislature has found, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

9.      In recognition of these concerns over the security of individuals' biometric data, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity may not obtain and/or possess an individual's biometric identifiers unless it: (1) informs that person (or their representative) in writing that a biometric identifier or biometric information is being collected or stored, *id.* 14/15(b)(1); (2) informs that person in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used, *id.* 14/15(b)(2); (3) receives a written release from the person (or their representative) for the collection of his or her biometric identifier or information, *id.* 14/15(b)(3); and (4) publishes publicly available written retention schedules and guidelines for permanently destroying biometric data, *id.* 740 ILCS 14/15(a). Further, the entity must store, transmit, and protect from disclosure all biometrics using the same standard of care in the industry and in a manner at least as protective as the means used to protect other confidential and sensitive information. *Id.* 14/15(e). Finally, no

3

private entity may sell, lease, trade, or otherwise profit from a person's or customer's Biometrics. *Id.* 14/15(c).

10.     In violation of Section 15(b) of BIPA, Defendant is actively collecting, storing, and using—without providing adequate notice, obtaining written releases—the biometric identifiers of thousands of Illinois residents who have obtained passport pictures in CVS's stores across the State. Defendant is also unlawfully profiting from the sale or commercial use of biometric identifiers—the same biometrics that they collect under prongs 15(a) and 15(b) of BIPA.[3]

11.     BIPA confers on Illinois residents, inclusive of Plaintiffs and the putative class members, a right to know about the inherent risks of Biometrics collection and storage, and a right to know how long such risks will persist.

12.     Defendant failed to comply with its duties under Illinois law—CVS never adequately informed its consumers of its Biometrics collection practices, never obtained written consent from any of its consumers and never provided any data retention or destruction policies to any of its consumers. Moreover, CVS invaded Plaintiffs and the putative class members 'privacy through the unauthorized collection, retention and use of their Biometrics.

13.     As such, Plaintiffs bring this action on behalf of themselves and all others similarly situated (hereinafter, the "Class") to prevent Defendant from further violating the statutory rights of Illinois' residents, as well as to recover statutory damages for Defendant's unauthorized collection, storage and use of these individuals' biometric identifiers.

---

[3]     Plaintiffs alleged in their initial complaint violations of Sections 15(a), (b) and (c). By order dated December 2, 2022, the Court held Plaintiffs lacked standing to pursue the sub-section (a) and (c) claims in federal court and remanded those claims to state court. *See* ECF. No. 13. The Court also granted Defendant's motion to dismiss the Section 15(b) claim pursuant to Fed. R. Civ. P. 12(b)(6).  By order dated February 3, 2023, this Court permitted Plaintiffs to file an amended complaint by February 7, 2023. *See* ECF 21. Accordingly, this Amended Complaint sets forth additional allegations giving rise to a plausible right to relief under Section 15(b).

## II. PARTIES

**14.** Plaintiff Denise Daichendt is an Illinois resident residing in Cook County who had her biometric identifiers collected in January 2022 at a CVS store located at 6200 W. Higgins Ave, Chicago, Illinois 60630 (Cook County) when she had her photo ID/passport picture taken. Plaintiff was not informed that her biometric identifiers were being taken, was not presented with a written retention/deletion schedule and never gave written consent to have her biometric identifiers taken.

**15.** Plaintiff Ada "June" Odell is an Illinois resident residing in Cook County who had her biometric identifiers collected in August 2021 at a CVS store located at 7139 N. Milwaukee Ave., Niles, Illinois (Cook County), when she had her photo ID/passport picture taken.. Plaintiff was not informed that her biometric identifiers were being taken, was not presented with a written retention/deletion schedule and never gave written consent to have her biometric identifiers taken.

**16.** Defendant CVS Pharmacy Inc.("CVS") is a corporation with its principal place of business located at One CVS Drive in Woonsocket, Rhode Island 02895.

**17.** CVS Pharmacy Inc. operates and controls CVS' retail business, including the CVS stores at issue in this case, which is where the biometric identifiers of Plaintiffs and other class members were collected. CVS is a subsidiary of CVS Health Corporation.

## III. JURISDICTION AND VENUE

**18.** This Court has subject matter jurisdiction and personal jurisdiction over the parties in this lawsuit.

**19.** This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (i) this is a class action involving more than 100 class members and at least one class member is a citizen of a state different from CVS and (ii) the amount in

controversy is in excess of $5,000,000, exclusive of interests and costs. See also ECF 1, Notice of Removal, at 2-3 (discussing that CAFA's requirements are satisfied).

20.     This Court has personal jurisdiction over the Plaintiffs because they are citizens of Illinois and reside in this judicial district.

21.     Consistent with the Due Process Clauses of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over CVS because it conducts commerce in the State of Illinois and is therefore present in the State of Illinois such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

22.     Specifically, this Court has personal jurisdiction over Defendant because CVS owns, operates or franchises hundreds of CVS stores in the State of Illinois. Defendant used and disseminated data derived directly from Illinois consumers, including Plaintiffs, and exposed residents of Illinois to ongoing privacy risks within Illinois based on the collection, capture, obtainment, disclosure, redisclosure and dissemination of biometric identifiers.

23.     Furthermore, the images and recordings Defendant used for their unlawful collection, capture and obtainment of biometric identifiers were taken at CVS stores located in the State of Illinois. Defendant knew, or should have known, that its collection, capture, obtainment, disclosure, redisclosure and dissemination of impacted individuals 'biometric identifiers would injure Illinois residents and citizens.

24.     Defendant knew or had reason to know that collecting, storing, using, disclosing and disseminating Illinois citizens 'and residents 'biometric identifiers without providing the requisite notice or obtaining the requisite consent would deprive Illinois citizens and residents of their statutorily protected privacy rights, neutralize Illinois citizens 'and residents 'ability to control

access to their biometric identifiers and expose Illinois residents to potential surveillance and other privacy harms as they went about their lives within the State.

25.     Venue is proper in this judicial district because Plaintiff and many Class Members reside in the Northern District of Illinois and throughout the State of Illinois, and a substantial part of the events or omissions giving rise to Plaintiffs 'and the putative class members 'claims occurred in this judicial district.

## IV.     FACTUAL ALLEGATIONS

### The Illinois BIPA

26.     In 2008, the Illinois Legislature enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

27.     BIPA makes it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

28.     The statute defines biometric identifiers as follows: "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.'"

29.     As detailed herein, this case concerns Defendants 'collection of biometric identifiers by a "scan of . . . face geometry."

30.     To facilitate these informed notice and consent provisions, Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

31.     BIPA also makes it unlawful to share or sell "for profit" biometric identifiers without the proper consent, "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

32.     To enforce BIPA's requirements, the statute includes a private right of action authorizing "[a]ny person aggrieved by a violation" to sue and recover for each violation damages of $1,000 for a negligent violation, or $5,000 in the event of an intentional or reckless violation, plus attorneys 'fees, costs, and appropriate injunctive relief. 740 ILCS 14/20.

### Defendant's Business & Collection of Biometrics

33.     CVS is "the leading health solutions company[.]"[4]

34.     "CVS" stands for the Consumer Value Store, and its stores market and sell pharmacy, food, basic clothing, baby products, office supplies and toys—among other items.

35.     Currently, there are over 200 CVS stores in Illinois.

---

[4]     **https://www.cvshealth.com/about-cvs-health**, (last accessed May 12, 2022).

**36.**     One of the services that CVS markets and sells to consumers in Illinois is passport pictures.

**37.**     According to the webpage **https://www.cvs.com/photo/passport-photos** (which is owned and maintained by CVS), "[CVS] take[s] passport and ID photos using the KODAK Biometric ID Photo System, which automatically verifies your photos meet all government requirements… [Consumers] receive two prints, one with [their] ID photos and one with [their] verification certificate."[5]

**38.**     There are numerous CVS stores which offer the Biometric ID Photo System in the State of Illinois.

**39.**     The KODAK Biometric ID Photo System allows users to take and to edit pictures of facial images through the "KODAK | Alaris" application called "KODAK Moments."[6]

**40.**     KODAK advertises the software to end-user retail locations as a means to "Profit from passport photos."[7]

**41.**     CVS uses the KODAK Biometric ID Photo System (the "System") to take photos for passports and other IDs, such as visas.[8]

**42.**     Passport photos and photos for other official documents, have certain requirements regarding size of photos, the size of the image within the photo frame and correct facial expressions.

**43.**     CVS advertises the System as ensuring that these requirements are met:

---

[5]     **https://www.cvs.com/photo/passport-photos**, (last accessed May 12, 2022).

[6]     **https://imaging.kodakalaris.com/sites/default/files/files/products/KODAKPictureKioskSoftwareV6.1-sellsheet_A4_EN_LR.pdf**, (last accessed May 12, 2022).

[7]     *Id*. at 2.

[8]     **https://www.cvs.com/photo/passport-photos**, (last accessed Feb. 7, 2023).

> We take passport and ID photos using the KODAK Biometric ID Photo System, which automatically verifies your photos meet all government requirements. No need to worry about the latest regulations – our patented system updates as regulations change.[9]

**44.** To utilize the CVS passport service customers must first fill out information on self-service computer terminals within the CVS store.

**45.** The process begins by consumers selecting the "Get Started" button on the "Biometric ID Photo" page, which appears as follows:



---

[9]     *Id.*

46.     Next, after the "Get Started" button is pressed, consumers are required to provide the following identifying information: Last Name, First Name, Phone Number and Email, by filing out the required fields which appear as follows:





47.     A user cannot proceed with any other aspect of using the System to obtain passport photos without providing this identifying information.

48.     Each of the Plaintiffs, and upon information and good faith belief, each of the putative class members provided the information requested by CVS in order to use the System.

49.     Accordingly, CVS had in its possession the full name, email and phone number for each person using the System to obtain passport photos.

50.     After the information is entered, a CVS employee takes a photo using a digital camera.

51.     The digital image is then scanned for biometric identifiers using the KODAK Biometric ID Photo System.

52.     The KODAK Biometric ID Photo System performs a scan of face geometry on the consumer's photo.

53.     In doing so, CVS "collect[s], capture[s] . . . /or otherwise obtain[] a person's or a customer's biometric identifier."

54.     In addition, CVS can match the scanned biometric identifiers with the real-world identifying information (name, phone, number, email) it has just collected from consumers, as described above.[10]

55.     As further evidence that the System collects, captures, stores and/or or otherwise obtains consumers 'biometric identifiers, each consumer receives a "Certificate of Biometric Passport Photos" (the "Certificate") *after* the scan is complete.

---

[10]     *Compare* ECF 13 at 9 (stating that "Plaintiffs do not allege that they provided defendant with any information, such as their names or physical or email addresses, that could connect the voluntary scans of face geometry with their identities.").

12

56.     The Certificate, which Plaintiffs received, confirms that a scan of facial geometry was performed to confirm that the photos meet the following criteria:

    a.  Image must be the correct size;

    b.  There must be a proper width/height ratio;

    c.  *Correct head size*;

    d.  *Correct position of head in photograph*;

    e.  Image must be sufficiently bright;

    f.  Image must have sufficient color balance;

    g.  *Eyes must be open*;

    h.  *Eyes must be looking straight ahead*;

    i.  *Mouth must be closed and not smiling*;

    j.  *Eye glasses are not present/glare not present*; and

    k.  *Facial position must be in the proper position.*

57.     A photo of this card is included on the CVS website, and Plaintiffs each received it along with their printed passport photos after the scan was completed:[11]

---

[11] https://www.cvs.com/photo/passport-photos?CID=aff:100357191:14424610&cjevent=1cec1782d2da11ec812c006d0a1c0e0c&cjdata=MXxOfDB8WXww



**58.**     The Certificate further confirms that CVS has performed a scan of facial geometry on consumers, including Plaintiffs, and therefore collected, captured, stored and/or or otherwise obtained biometric identifiers in the process.

**59.**     CVS actively collects biometric identifiers, has control over the biometric identifiers, can access the biometric identifiers and actually uses the biometric identifiers as is evidenced by the fact that CVS matches each customer's facial geometry against the passport photo requirements.

**60.**     CVS could not certify the Biometric Passport Photos as it does without collecting biometric identifiers because verifying the specified criteria—eyes open, eyes looking straight ahead, mouth unsmiling, facial position, head size and so on–necessarily requires mapping and measuring these facial features.

**61.**     CVS would not be able to determine if a person's eyes are open, eyes looking straight ahead, mouth unsmiling, or the positioning of their head, without scanning facial geometry *ie*, the geometry of the eyes, mouth, and face. Such measurements are unique to the individual; the scan of Plaintiff Daichendt's facial geometry is distinct from the scan of Plaintiff Odell's facial

geometry, and this is true for each member of the proposed class. CVS has the ability to match these scans of facial geometry with the names, phone numbers, and email addresses which it collected from each customer prior to performing the scans.

62.     In sum, CVS structured its passport photo system such that users must first provide individually identifying information such as name and email address and then linked that identifying information with the users' Biometrics derived from scans of their passport photos.

63.     Simply put, CVS devised (and profited from a System) whereby it collected the Biometrics of Plaintiffs and the putative class members and was, as a result of the identifying information required to use the System, capable of associating the Biometrics collected with the users 'identities.

### Representative Plaintiffs' Experiences

### A.     Plaintiff Daichendt

64.     Plaintiff Daichendt is, and has been at all relevant times, an Illinois resident.

65.     On February 15, 2022, Plaintiff Daichendt had her passport photo taken at a CVS location in Illinois.

66.     That CVS location used the KODAK Biometric ID Photo System to take said photo and to scan her facial geometry from those photos and therefore CVS collected, captured, stored, and/or otherwise obtained Plaintiff Daichendt's biometric identifiers in the process.

67.      Prior to having her biometric identifiers collected and used, Plaintiff Daichendt accessed the kiosk and, as required, provided CVS her name, email and phone number.

68.     Prior to collecting and using Plaintiff Daichendt's biometric identifiers, CVS: (i) did not inform Plaintiff in writing that it was collecting her biometric identifiers, (ii) did not inform

Plaintiff of the specific purpose and length of term for which a biometric identifier is being collected, stored and used and (iii) did not receive a written release from Plaintiff.

69.    Plaintiff did not know that Defendant would collect, obtain, store and/or use her biometric identifiers.

70.    Plaintiff did not give informed written consent for CVS to collect, obtain, store, and/or use or store her biometric identifiers.

**B.    *Plaintiff Odell***

71.    Plaintiff Odell is, and has been at all relevant times,  an Illinois resident.

72.    On October 1, 2021, Plaintiff Odell had her ID photo and/or passport photo taken at a CVS location in Niles, Illinois.

73.    That CVS location uses the System to take said photos and to scan her facial geometry from those photos and therefore CVS collected, captured, stored and/or otherwise obtained Plaintiff's biometric identifiers in the process.

74.    Prior to having her biometric identifiers collected and used, Plaintiff Odell accessed the kiosk and, as required, provided CVS her name, email and phone number.

75.    Prior to collecting and using Plaintiff Odell's biometric identifiers, CVS: (i) did not inform Plaintiff in writing that it was collecting her biometric identifiers, (ii) did not inform Plaintiff of the specific purpose and length of term for which a biometric identifier is being collected, stored and used and (iii) did not receive a written release from Plaintiff.

76.    Plaintiff Odell did not know that Defendant would collect, obtain, store, and/or use her biometric identifiers.

77.    Plaintiff Odell did not give informed written consent for CVS to collect, obtain, store, and/or use or store her biometric identifiers.

## V.    CLASS ALLEGATIONS

**78.**    This action is brought by the named Plaintiffs on their own behalf and on behalf of

a proposed Class of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure

23, defined as follows:

> All Illinois citizens during the statutorily allowed period whose biometric
> information or biometric identifiers were collected, captured, stored, purchased,
> received through trade or otherwise obtained by CVS via the KODAK Biometrics
> ID Photo System for ID photos, passport photos or any other identifying photos
> without prior express written consent.

**79.**    All members of the proposed Class are citizens of Illinois.

**80.**    The principal injuries resulting from the alleged conduct or any related conduct of

each Defendant were incurred in Illinois.

**81.**    Excluded from the proposed class are any claims for personal injury, wrongful

death, or other property damage sustained by the Class; and any Judge conducting any proceeding

in this action and members of their immediate families.

**82.**    The Class is so numerous that the individual joinder of all members is

impracticable. While the exact number of Class members is unknown at this time, it is generally

ascertainable by appropriate discovery, is in the exclusive control of CVS and it is believed that

the Class may include at least thousands of members.

**83.**    Common questions of law or fact arising from the defendant's conduct exist as to

all members of the Class. These common questions include, but are not limited to, the following:

> a.    Whether Defendant collected or otherwise obtained Plaintiffs 'and the Class '
>        biometric identifiers;
>
> b.    Whether Defendant properly informed Plaintiffs and the Class that it collected,
>        used, and stored their biometric identifiers;

    c.    Whether Defendant obtained a written release to collect, use, and store Plaintiffs' and the Class'biometric identifiers;

    d.    whether CVS's violations of BIPA were committed intentionally, recklessly, or negligently.

    e.    Whether Plaintiffs and members of the Class sustained damages as a result of CVS's activities and practices referenced above, and, if so, in what amount; and

84.    Class action treatment provides a fair and efficient method for the adjudication of the controversy herein described, affecting a large number of persons, joinder of whom is impracticable.

85.    The class action device provides an appropriate and effective method whereby the enforcement of the rights of Plaintiffs and members of the Class can be fairly managed without unnecessary expense or duplication.

86.    The expense and burden of individual litigation of a case of this magnitude makes it impracticable for individual Class members to seek redress for the wrongs worked upon them.

87.    Individual litigation of all claims which might be asserted by all Class members would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years.

88.    The certification of a Class would allow litigation of claims that, in view of the expenses of litigation, may be insufficient in amounts to support separate actions.

89.    Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class members, and result in judicial consistency.

90.     Plaintiffs will fairly and adequately protect the interests of the Class they represent. The interests of Plaintiffs, as the Class representative, are consistent with those of the members of the Class.

91.     In addition, Plaintiffs are represented by counsel experienced in complex and class action litigation.

92.      The prosecution of separate actions by individual members of the Class would create a risk of:

   a.   Inconsistent or varying adjudications with respect to individual members of the Class; and

   b.   Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

93.     Plaintiffs and Class members envision no unusual difficulty in the management of this action as a Class action.

## VI.    CAUSES OF ACTION

### <u>COUNT I</u>

**<u>Violations of 740 ILCS 14/1, *et seq.*</u>**
**<u>(on behalf of Plaintiffs and the Class)</u>**

94.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

95.     BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric

information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

96. Defendant is a corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

97. Plaintiffs and the Class members are individuals who had their biometric identifiers collected, used and stored by Defendant. *See* 740 ILCS 14/10.

98. Defendant systematically collected, used, stored, and/or otherwise obtained Plaintiffs 'and the Class members 'biometric identifiers by collecting and using scans of their facial geometry from digital photographs it took of them.

99. Defendant did not comply with any of the requirements of BIPA Section 15(b).

100. Prior to collecting and using Plaintiff's biometric identifiers, CVS did not: (i) inform Plaintiffs in writing that it was collecting their biometric identifiers, (ii) inform Plaintiff of the specific purpose and length of term for the biometric identifier is being collected, stored, and used, and did not (iii) receive a written release from Plaintiffs.

101. As detailed above, prior to collecting and using Plaintiffs 'biometric identifiers, Defendant required that each user of the System (to wit, Plaintiffs and the putative class members) provide their names, email and phone number.

102. This information enables Defendant to associate the collected biometric identifiers with Plaintiffs identities.

103. Each instance in which Defendant collected, stored, used or otherwise obtained Plaintiffs' and/or members of the Class 'biometric identifiers constitutes a separate violation of the statutory right of Plaintiffs and each putative class member to keep private this biometric identifiers, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

104. On behalf of themselves and members of the proposed Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements\ (2) statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the violations are found to have been committed negligently and (3) reasonable attorneys 'fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that the actions of Defendant, as set out above, violate BIPA, 740 ILCS l4/1, *et seq.*;

C. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Illinois Class, including, *inter alia*, an order requiring that Defendant ensures its collection, storage and usage of biometric identifiers complies with BIPA;

D. Awarding Plaintiffs and the Illinois Class statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every

violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent;

E.  Awarding Plaintiffs and the Class reasonable litigation expenses and attorneys' fees;

F.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require


Dated: February 7, 2023                    Respectfully submitted,


                                           */s/ Gary M. Klinger*
                                           _____

                                           Gary M. Klinger
                                           **MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN, PLLC**
                                           227 W. Monroe Street, Suite 2100
                                           Chicago, Illinois 60606
                                           Telephone: (866) 252-0878
                                           Email:  **gklinger@milberg.com**

                                           Andrei V. Rado
                                           **MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN, PLLC**
                                           100 Garden City Plaza, Suite 500
                                           Garden City, New York 11530
                                           Telephone: (212) 594-5300
                                           Email:  **arado@milberg.com**

                                           *Attorneys for Plaintiffs*